# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

ME2 PRODUCTIONS, INC.,

a Nevada Corporation,

        Plaintiff,

  v.

JOHN DOES 1-7,

        Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ME2 Productions, Inc. ("Plaintiff"), a Nevada corporation, sues Defendants John Does 1-7 (collectively "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2. The Plaintiff alleges that each Defendant is liable for direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights,

trademarks, and unfair competition).

4. As shown on Exhibit 1 attached to this Complaint, each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical location within this District, and therefore, pursuant to Colo. Rev. § 13-1-124, this Court has personal jurisdiction over each Defendant because: (a) each Defendant committed the tortious conduct alleged in this Complaint in the State of Colorado, and/or (b) has engaged in business transactions in the State of Colorado.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because (1) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (2) the majority of the Defendants reside in this State. Additionally, venue is proper in this District pursuant to 28 U.S.C. §1400(a) (venue for copyright cases), because the majority of the Defendants or Defendants' agents reside in this District.

## PARTIES

6. The Plaintiff is a corporation registered under the laws of the State of Nevada. The Plaintiff is a developer and producer of mainstream motion pictures, and this action concerns the unauthorized copying and redistribution by the Defendants of the Plaintiff's mainstream motion picture titled "Mechanic: Resurrection" in violation of United States copyright laws.

7. Each Defendant is known to the Plaintiff only as an unidentified user of an IP address traced to a physical location within this District at a specific date and time (*see* Exhibit

2

1).

8. An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to a subscriber of its Internet connection services during a specified period of time.

9. Identifying the subscriber assigned to an IP address at a specific time can lead to the identity of the probable user or users of that IP address at the precise time when infringing conduct was detected and thereby lead to a copyright infringement Defendant's true identity.

## JOINDER

10. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that: (a) each of the Defendants is liable to the Plaintiff jointly, severally, or in the alternative for infringing the Plaintiff's Work; (b) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's Work, and was accomplished by the Defendants acting in concert with other infringers of the Plaintiff's work; and (c) there are questions of law and fact common to all Defendants. Indeed, the claims against each of the Defendants are identical, and each of the Defendants used a BitTorrent protocol, jointly and in concert with other infringers, to infringe the Plaintiff's copyrighted Work.

## FACTUAL BACKGROUND

### I. *The Plaintiff Owns the Copyright to the Work*

11. The Plaintiff is the owner of United States Copyright Registration Number PA 1-998-057 (the "Registration") (Exhibit 2) for the motion picture titled "Mechanic:

Resurrection" (the "Work"). "Mechanic: Resurrection" is an action thriller sequel to the highly successful 2011 film "The Mechanic." It stars Tommy Lee Jones and other notable mainstream actors. It has a national advertising campaign and had a significant opening release on over 2,200 screens, including early screenings in this jurisdiction (*see* Exhibit 3). The Work therefore has significant value, and the Plaintiff has created and produced it at considerable expense.

12. The Work has an effective registration date of August 2, 2016.

13. A copy of the Certificate of Registration for the Work that is on file with the U.S. Copyright Office, which is evidence, among other things, of the Plaintiff's ownership of the Registration and the Registration date, is attached to this Complaint as Exhibit 2.

II. *General Factual Background and Reasons for Seeking Relief from this Court.*

14. The Plaintiff comes to court seeking relief because its Work has been illegally pirated over the Internet hundreds of thousands of times worldwide, and many of these instances of piracy occurred in this judicial district. In fact, the Plaintiff's copyrighted Work, "Mechanic: Resurrection," was the most pirated film in the United States during the same week that it was shown in local theaters in this jurisdiction (*see and compare* Exhibits 3 & 4 attached hereto).

15. The Defendants are not merely illegal viewers of the Plaintiff's Work, but they are also parties that maintained the motion picture in a manner that facilitated further distribution and infringing activity by others.

16. The IP addresses that were used or accessed by the Defendants have also been observed as associated with the peer-to-peer exchange of numerous other titles in violation of others' copyrights through the BitTorrent network, and this activity indicates that the Defendants' misconduct has been willful and persistent.

4

17. The volume and titles of the activity associated with each IP address accessed by each Defendant indicates that each Defendant is likely either the primary subscriber assigned to the IP address, someone who resides with the primary subscriber, or someone who is an authorized user of the IP address and had consistent and permissive access to it.

18. The volume of the activity associated with the IP address accessed by each Defendant indicates that anyone actively using or observing activity on the IP address would likely be aware of the Defendant's conduct that is alleged in this Complaint.

19. The volume and titles of the activity associated with the IP address accessed by each Defendant indicates that the Defendants are not young children.

20. On the specific dates and times of the infringing activities alleged in this Complaint, the IP addresses accessed by the Defendants were managed by ISPs, who on information and belief, generally assign an IP address to a single party for extended periods of time, often for months, and provide Wi-Fi systems with pre-installed security and passwords.

21. ISPs generally notify and inform their subscribers about the importance of security, put their subscribers on notice that they are each responsible for the activity associated with their account, and caution their subscribers not to allow third party or unauthorized access.

22. The records maintained by each respective ISP can identify either each Defendant, or, at a minimum, the subscriber who contracted with the ISP for service, who, in turn, is likely to have knowledge that will lead to the identity of each Defendant.

23. The Plaintiff intends to seek limited expedited discovery, including leave to

5

subpoena information from the relevant ISP, in order to ascertain the true identity of each Defendant and be in a position to timely and properly serve each Defendant with a Summons and a copy of this Complaint, or, more specifically, an Amended Complaint naming the Defendant.

### III.   *The Defendants Used BitTorrent To Infringe the Plaintiff's Copyright*

24.  BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users of the BitTorrent protocol on the Internet account for over a quarter of all Internet traffic.  The creators and users of BitTorrent developed their own lexicon for use when talking about BitTorrent.[1]

25. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### A.   *Each Defendant Installed a BitTorrent Client onto his or her Computer.*

26.  Each Defendant installed a BitTorrent Client onto his or her computer, or, at the times relevant to this Complaint, was using a computer or device that already had a BitTorrent Client installed onto it.

27. A BitTorrent "Client" is a software program that implements the BitTorent

---

[1] Definitions of relevant portions of the BitTorrent vocabulary, which are fully incorporated herein, are set forth in several recent federal cases, including cases in this judicial district.  *See BKGTH Productions, LLC v. John Does 1-3, 5-10, 12, 15-16,* Civil Action No. 13-cv-01778-WYD-MEH, Dkt. #54, December 9, 2013, *citing Patrick Collins, Inc. v. John Does 1-28,* No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013).

Protocol. There are numerous such software programs including μTorrent and Vuze, both of which can be directly downloaded from the Internet. See www.utorrent.com and http://new.vuze-downloads.com/.

28. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

B.   *The Initial Seed, Torrent, Hash and Tracker*

29. Using a BitTorrent Client requires multiple intentional acts.

30. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

31. The Client takes the target computer file, the "initial seed," here the Plaintiff's Work, and divides it into identically sized groups of bits known as "pieces."

32. The Client then gives each one of the computer file's pieces, in this case, pieces of the Plaintiff's Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

33. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

34. Torrent files also have an "announce" section, which specifies the URL

7

(Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

35. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

36. The tracker computer or computers direct a peer user's computer to other peer users' computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

37. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

C. *Torrent Sites*

38. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com.

39. Upon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's Work.

D. *Uploading and Downloading a Work Through a BitTorrent Swarm*

40. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to

8

which the torrent is linked (here the Plaintiff's Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

41. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the Plaintiff's Work, to the peers seeking to download the computer file.

42. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

43. In this way, all of the peers and seeders are working together in what is called a "swarm."

44. Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

45. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

46. Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also,

once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the Plaintiff's Work.

### E. *The Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Work.*

47. The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's Work.

48. MEU used proprietary forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

49. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: B4A81D27B29589DD704A84498780ED183F12EB69 (the "Unique Hash Number").

50. The IP addresses, Unique Hash Number, and infringement dates and times that are shown on Exhibit 1 accurately reflect what is contained in the evidence logs, and show:

(A) Each Defendant had copied a piece of the Plaintiff's Work identified by the Unique Hash Number; and

(B) Therefore, each Defendant was part of the same series of transactions.

51. Through each of the transactions, each of the Defendants' computers or devices used their identified IP addresses to connect to the investigative server from a computer or device in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

52. An agent or employee of MEU analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

53. An agent or employee of MEU viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

54. Further, an agent or employee of MEU observed each Defendant actively distributing, or "seeding," the Plaintiff's Work to other peers in the same swarm.

## MISCELLANEOUS

55. All conditions precedent to bringing this action have occurred or been waived.

56. Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

## FIRST CLAIM FOR RELIEF
### (Direct Infringement)

57. The Plaintiff incorporates the allegations in the foregoing paragraphs.

58. Plaintiff is the owner of the copyright to the Work, which contains an original work of authorship.

59. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the Plaintiff's work that are original.

60. The Plaintiff did not authorize, permit, or provide consent to the

11

Defendants to copy, reproduce, redistribute, perform, or display its Work.

61. As a result of the foregoing, each Defendant violated the Plaintiff's exclusive right to:

(A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the Plaintiff's Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and,

(D) Display the Plaintiff's Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

62. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

63. By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income derived from its showing in public theaters, but also all persons involved in the production and marketing of this motion picture, numerous owners of local theaters in Colorado where it has been shown, and their employees, numerous other local theaters where it might have otherwise been shown, and their employees, and, ultimately, the local Colorado economy (*see* Exhibits 3 and 4 attached to

this Complaint). The Defendants' misconduct therefore offends public policy.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin each Defendant and all other persons who are in active concert or participation with any Defendant from continuing to infringe the Plaintiff's Work;

(B) order that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's Work from each of the computers under each such Defendant's possession, custody, or control;

(C) order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiff statutory damages pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 2nd day of May, 2017.

Respectfully submitted,

/s/ *David J. Stephenson, Jr.*
David J. Stephenson, Jr.
5310 Ward Rd., Suite G-07
Arvada, CO 80002
Telephone: (303) 726-2259
Facsimile: (303) 362-5679
david.thunderlaw@gmail.com
Attorney for the Plaintiff

**Plaintiff's Name and Address:**
ME2 Productions, Inc.
318 N. Carson St., #208
Carson City, NV 89701